**Linas VENCLAUSKAS, Plaintiff,**

v.

**STATE OF CONNECTICUT, DEPT. OF PUBLIC SAFETY DIVISION OF STATE POLICE, Defendant.**

**Civil No. 3:95CV00373 (AVC).**

United States District Court, D. Connecticut.

Aug. 17, 1995.

Gary Edward Phelan, Garrison, Phelan, Levin–Epstein & Penzel, New Haven, CT, for plaintiff.

Margaret Quilter Chapple, Attorney General's Office, Public Safety & Special Revenue, Hartford, CT, for defendant.

### RULING ON DEFENDANT'S MOTION TO DISMISS

COVELLO, District Judge.

This is an action, inter alia, for declaratory, injunctive and other equitable relief brought pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Rehabilitation Act"). The defendant has filed the within motion to dismiss the ADA and Rehabilitation Act claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues are: 1) whether the complaint has alleged with sufficient particularity that the plaintiff is an "individual with a disability" within the meaning of the ADA; and 2) whether the complaint has alleged with sufficient particularity that the plaintiff is an "individual with a disability" within the meaning of the Rehabilitation Act. For the reasons that hereafter follow, the court concludes that the plaintiff has failed to state a claim under either the ADA or the Rehabilitation Act. Accordingly, the court grants the defendant's motion to dismiss.

## FACTS

Examination of the complaint discloses the following:

Since 1987, the plaintiff, Linas Venclauskas has worked as a patrol officer with the Torrington, Connecticut police department. In 1992, he applied to the defendant for a position as a state police trooper trainee.

On October 29, 1994, John S. Leonard ("Leonard"), the defendant's commanding officer of selection and training, sent the plaintiff a letter extending him an offer to participate in the 105th Connecticut state police training troop on the condition that, inter alia, the plaintiff successfully undergo a complete medical examination.

On November 16, 1994, Leonard notified the plaintiff by letter that he had not been selected for a position in the 105th training troop. The letter further stated that "[t]his decision was reached after assessing the results of your medical evaluation in comparison to our established standards."

Upon receiving the letter, the plaintiff contacted Leonard to find out why the defendant had withdrawn its conditional offer of employment. Leonard responded that the plaintiff was rejected based on the results of his vision test. In response to the plaintiff's inquiry as to how to appeal the decision, Leonard stated that the plaintiff would need another vision test and that the test results would have to indicate that the plaintiff met the defendant's vision standards.

The plaintiff immediately completed a visual examination with his optometrist and provided the results to the defendant. On November 30, 1994, Leonard sent the plaintiff a letter stating that the defendant's vision specialist had reviewed the results of the visual examinations and:

> At the near point 16 inch test distance our established standard is a minimum of 20/30 unaided visual acuity with each eye. Your test results revealed visual acuity of 20/120 unaided with the right eye and 20/80 unaided with the left eye. Furthermore, the additional test indicated a difficulty of achieving and sustaining clear visual acuity within arms['] reach.

The letter concluded by stating that "based upon our original examination and in the absence of any clear contrary evidence, you failed to meet our established vision standards and will not continue in the selection process."

## STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "merely ... assess[es] the legal feasibility of the complaint, [it does] not ... assay the weight of evidence which might be brought in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir. 1984). In deciding a motion to dismiss, "the court 'must accept the material facts alleged in the complaint as true,'" *Staron v. McDonalds Corp., et. al.,* 51 F.3d 353, 355 (2d Cir.1995) (citing *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994)), and draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court must determine whether the plaintiff has stated a claim upon which relief may be granted. *Fischman v. Blue Cross Blue Shield,* 755 F.Supp. 528 (D.Conn.1990). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991).

## DISCUSSION

The defendant contends that "the facts alleged by the plaintiff are insufficient to establish that he is an 'individual with disabilities' under either the Rehabilitation Act or the [ADA]." Specifically, the defendant argues that "[the plaintiff's] visual impairment does not substantially limit his ability to work, or even to work in law enforcement. The plaintiff's claim is based entirely upon his inability to obtain ... a position as a Connecticut State Police Trooper Trainee." The defendant asserts, therefore, that the

plaintiff is not entitled to relief under either the Rehabilitation Act or the ADA.

The plaintiff responds that he "has a substantial impairment of a major life activity" which qualifies him as a "person with a disability" under both the Rehabilitation Act and the ADA. Specifically, the plaintiff responds that he is substantially limited in seeing, driving and working.

The ADA [1] makes it illegal to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to [the] ... terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). In order to be entitled to relief under the ADA, therefore, the plaintiff must plead facts that establish that he is a "qualified individual with a disability." *See* 42 U.S.C. § 12112(a).

The phrase "qualified individual with a disability" is defined by the ADA as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Disability" is defined as "A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such an impairment; or C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Heilweil v. Mt. Sinai Hospital,* 32 F.3d 718, 722 (2d Cir.1994).

Regulations adopted by the Equal Employment Opportunity Commission ("EEOC") further define the terms included within the ADA definition of disability. The regulations define "major life activities" as follows: "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The term "substantially limits" is defined as follows:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. 1630.2(j)(1).

EEOC regulations set forth the following factors that should be considered in determining whether an individual is substantially limited in a major life activity: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

 First, the plaintiff alleges that his visual acuity of 20/80 (unaided left) and 20/120 (unaided right) "constitutes an impairment of one or more of his major life activities, including, but not limited to, seeing and driving." However,

[t]he Rehabilitation Act assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.

---

1. The definition of an "individual with a disability" in the ADA is virtually identical to the definition of "individual with a handicaps" under the Rehabilitation Act. 29 C.F.R.Pt. 1630, App., 56 Fed.Reg. 35726, 35740 (July 26, 1991); *see Chandler v. City of Dallas,* 2 F.3d 1385, 1391 (5th Cir., 1993). "Congress intended that the relevant case law developed under the Rehabilitation Act should be generally applicable to the term 'disability' as used in the ADA." 20 C.F.R.Pt. 1630, App.—*Interpretive Guidance on Title I of the Americans with Disabilities Act,* citing S.Rep. No. 116, 101st Cong., 1st Sess. 21 (1989). Both parties accept this definitional analysis and cite interchangeably the cases which interpret both the Rehabilitation Act and the ADA.

*Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986) (citing *Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 (6th Cir. 1985)). The plaintiff insists that his visual acuity should be considered without regard to mitigating measures, i.e. the use of corrective lenses. Assuming, arguendo, that the plaintiff's use of contact lenses is disregarded, the court still does not find the plaintiff's visual "impairment" to be unusually severe or rare. *See, Chandler v. City of Dallas,* 2 F.3d 1385 (5th Cir.1993) ("a person is not handicapped if his vision can be corrected to 20/200"); *Collier v. City of Dallas,* 798 F.2d 1410 (5th Cir.1986) (unpublished).

■ Second, the complaint alleges that the plaintiff falls within the EEOC definition of an "individual with a disability" because the defendant "regards the [p]laintiff as having a substantial impairment of one or more of his major life activities." The court concludes that the plaintiff has not established that the defendant regarded him as an "individual with a disability" within the meaning of 42 U.S.C. § 12102(2)(C). In order to fall within the "regarded as" definition, the plaintiff must prove that the defendant considered the plaintiff's impairment to foreclose not simply a particular job, but the type of employment involved generally.

In *Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986), an employer discharged an acrophobic employee who could not meet a job requirement of engineering at high altitudes. The employee sued, alleging disability discrimination. The court granted the employer's motion for summary judgment, holding that since the employer never doubted the employee's engineering abilities, but merely perceived him as unable to exercise his knowledge at high altitudes, there was no disability discrimination. "Far from being regarded as having a 'substantial limitation' in employability, [the plaintiff] was seen as unsuited for one position in one plant, and nothing more." *Id.* at 935. *See also Sharp v. Abate,* 887 F.Supp. 695, 699 (S.D.N.Y.1995) ("An impairment that limits an employee's ability to perform only one job is not a disability under the ADA."); *Scharff v. Frank,* 791 F.Supp. 182, 187 (S.D.Ohio 1991) ("An impairment that affects only a particu-

lar job or narrow range of jobs does not substantially limit the major life activities of the impaired individual."). The plaintiff's visual acuity does not substantially limit his ability to work, or even his ability to work in his chosen field of law enforcement. Rather, the plaintiff is foreclosed from employment within the narrow field of Connecticut state police law enforcement.

Accordingly, the plaintiff has not alleged facts sufficient to support the conclusion that he is an "individual with a disability."

### *CONCLUSION*

For the foregoing reasons, the court concludes that the plaintiff fails to state a claim for which relief may be granted. Accordingly, the defendant's motion to dismiss (document no. 8) is granted.

It is so ordered.