**Bernard CINO, Plaintiff,**

v.

**SIKORSKY AIRCRAFT and United Technologies Corp., Defendants.**

**No. Civ. 3:96–1164 (DJS).**

United States District Court, D. Connecticut.

Sept. 30, 1998.

William B. Barnes, Rosenstein & Barnes, Fairfield, CT, for Bernard Cino, plaintiff.

Gary L. Lieber, Anessa Abrams, Schmeltzer, Aptaker & Shepard, Washington, DC, Edward J. Dempsey, United Technologies Corp., Hartford, CT, for defendants.

### *RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

SQUATRITO, District Judge.

This is an action for damages, declaratory and injunctive relief brought pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). The defendant has filed the within motion for summary judgment on all of the plaintiff's claims. The issue presented is whether the defendant discriminated against the plaintiff due to his disability with regard to the terms, conditions and privileges of employment, by failing to make reasonable accommodations to the known physical limitations of the plaintiff. For the reasons that follow, the court concludes that the plaintiff has failed to demonstrate that his dismissal was due to a disability and, therefore, has failed to establish a violation of the ADA. The defen-

dant's motion for summary judgment is granted.

### FACTS

Examination of the complaint, affidavits, local Rule 9 statements, and the memorandum submitted in support of the motion for summary judgment, and the response thereto, discloses the following.

The plaintiff, Bernard Cino, had a history of chronic absenteeism. These problems were documented in performance evaluations beginning in June of 1985, and continuing up to his date of termination on March 5, 1993. Cino began working as a Boring Mill Operator for the defendant Sikorsky Aircraft in 1979. On June 25, 1985, the plaintiff received a written warning regarding his "poor attendance" at work. On December 13, 1985, the plaintiff injured his back at work. The plaintiff was placed on medical leave. On April 16, 1989 the plaintiff returned to work. The plaintiff engaged in only light duty.

On February 2, 1990, the plaintiff received another written warning regarding his "poor attendance" at work. On April 24, 1990, the plaintiff received his annual performance appraisal. The appraisal noted that the plaintiff "must improve attendance and productivity." On October 19, 1990, the plaintiff received another written warning regarding his "poor attendance" at work. On May 13, 1991, the plaintiff received his annual performance appraisal. The appraisal noted that the plaintiff "has shown improvement in attendance, but could still do better." On October 17 1991, the plaintiff reinjured his back while on the job. The plaintiff remained away from work until October 28, 1991.

On March 18, 1992, the plaintiff received his annual performance appraisal. The appraisal noted that the plaintiff "*must* improve attendance," and that "his attendance has drastically deteriorated over the past year." On May 7, 1992, the plaintiff received another written warning regarding his "poor attendance" at work.

On June 3, 1992, the plaintiff called his supervisor and informed him he had injured himself "clipping toe nails." The plaintiff never returned to work. On March 2, 1993, the plaintiff received his annual performance appraisal. The appraisal noted that the plaintiff "MUST IMPROVE ATTENDANCE!," and that he "HAS NOT BEEN TO WORK IN SIX MONTHS."

On February 4, 1993, the Dr. Eric Garver conducted an independent medical evaluation of the plaintiff. Garver recommended that the plaintiff return to work. On February 18, or 19, 1993, the company's medical department contacted the plaintiff and advised him that he could return to work. The plaintiff agreed return to work on February 22, 1993.

On February 22, 1993, the plaintiff failed to report to work. The plaintiff informed the defendant that his truck had caught on fire and that he could not drive to work. On March 5, 1993, the plaintiff was terminated due to chronic absenteeism and absence without leave.

### STANDARD OF REVIEW

A motion for summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if, after discovery, the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975)). A dispute con-

cerning a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

■ In a discrimination action, "a plaintiff opposing such a [summary judgment] motion must produce sufficient evidence to support a rational finding that the legitimate nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge." *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir. 1994). Although the plaintiff carries the ultimate burden in proving the defendant's ultimate intent, *see Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), summary judgment is generally inappropriate where intent and state of mind are at issue. *Montana v. First Federal Savings & Loan of Rochester*, 869 F.2d 100, 103 (2d Cir.1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

### DISCUSSION

The ADA[1] prohibits "discriminat[ion] against a qualified individual with a dis-

ability because of the disability of such individual in regard to [the] ... terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). The phrase "qualified individual with a disability" is defined by the ADA as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

A "[d]isability" is defined as "a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; b) a record of such an impairment; or c) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Heilweil v. Mt. Sinai Hospital*, 32 F.3d 718, 722 (2d Cir.1994). The term "substantially limits" is defined as follows:

(I) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. 1602.2(j)(1).

■ To be a qualified individual with a disability, a complainant must be, "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 94

---

1. The ADA (42 U.S.C. § 12101, *et seq.*) and the Rehabilitation Act (29 U.S.C. § 701, *et seq.*) can be used interchangeably. *See Staron v. McDonald's Corp.*, 51 F.3d 353, 355–56 (2d Cir.1995); *Venclauskas v. Conn. Dep't of Pub. Safety*, 921 F.Supp. 78, 81 n. 1 (D.Conn.

1995). The elements of a *prima facie* case under the ADA are the same as those under the Rehabilitation Act. *Wernick v. Fed. Reserve Bank of NY*, 1995 WL 598973, *2 (S.D.N.Y. 1995), *aff'd* 91 F.3d 379 (2d Cir.1996).

L.Ed.2d 307 (1987); *see also Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 135 (2d Cir.1995).

■ To establish a prima facie case of discrimination under the ADA, the plaintiff must show: (1) that he is "disabled" (as defined in the act); (2) that he was qualified to perform the basic function of his job; and (3) that he was terminated as a result of his disability. In the present case, the plaintiff has failed to present any evidence to support the second and third prongs of this analysis.

A. Otherwise Qualified.

■ The court first concludes that the plaintiff has not demonstrated that he was qualified to perform the basic functions of his job. To satisfy the requirements under the ADA, an employer is not required to make accommodations for an employee that fails to report to work. "An essential function of any government job is an ability to appear for work and to complete assigned tasks within a reasonable period of time." *Carr v. Reno*, 23 F.3d 525, 530 (D.C.Cir.1994). Cino's record of poor attendance demonstrates that the defendant could not rely upon him to fulfill these minimum expectations. "The ADA does not require an employer accommodate an employee who can not get to work. Plaintiff's inability to get to work on time, if at all, made her unqualified to perform the functions of her job." *Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 798 (W.D.N.Y.1996). Cino does not dispute that, after a six month leave of absence and prior to his date for return to work, he was cleared for work by Dr. Eric Garver and the Sikorsky medical department.

The plaintiff's subsequent inability to continue working upon her return does not trigger a continuous obligation to accommodate the plaintiff indefinitely for another unspecified leave of absence. The plaintiff had already been permitted

a five month leave of absence after a history of chronic absenteeism and disregard for her supervisors. As already noted, an employee must be present in order to perform the essential functions of a job. *Carr v. Reno*, 23 F.3d 525 (D.C.Cir.1994). It is not reasonable to require the defendant to accommodate the plaintiff where she is consistently unable to satisfy so basic a criterion. *Hunt–Golliday v. Metropolitan Water Reclamation*, 6 A.D. Cases 698, 1996 WL 22971 (N.D.Il.1996), rev'd on other grounds, 104 F.3d 1004 (1997).[2] The court concludes that the plaintiff's long history of absenteeism rendered him unqualified to perform the functions of his job.

B. Termination Motivated by Discrimination.

■ Even if the plaintiff could demonstrate that he was a qualified person with a disability, the court would nonetheless grant the defendant's motion for summary judgment. In the present case, the plaintiff has also failed to present any evidence tending to show that his termination was motivated by discrimination. The plaintiff makes only conclusory allegations with respect to this claim.

The defendant's asserted reasons for terminating the plaintiff was excessive absenteeism and absence without official leave. The plaintiff does not dispute that his failure to report to work on February 22, 1993 was not due to a medical condition or a disability. The plaintiff claims, however, that the reason for his termination was pretextual because he was not absent without leave ("AWOL"). The plaintiff argues that he called the Medical Department on February 22, 23, 24, and 25, 1993. Pltf's Opp. at 15 (citing Pl.'s Aff. para. 11). The defendant disagrees with the plaintiff's account and asserts that its own medical department telephoned the plaintiff on February 22 and February 25. Irrespec-

---

**2.** The appellate court specifically held that "the district court correctly dismissed" the plaintiff's ADA claim. 104 F.3d at 1014.

tive of the dates that the plaintiff claims he called into work, there was still no contact between the plaintiff and the defendant on February 26, March 1, March 2, March 3, March 4, and March 5, 1993. *See* Garbien Decl. para. 7 and Exh. I. Regardless of which account is accepted, the plaintiff's date· of termination was March 5, 1993. The plaintiff was AWOL for one week before he was terminated by the defendant.

The Company's Employee Manual contains a section entitled "Time Away From Work" which states, in relevant, part:

> The company expects you to report to work regularly to perform the job for which you were hired. If you do not report to work your supervisor will have to find someone else to do your job ... Frequent or unexplained absences from work will seriously impair the value of your services to the Company and could result in disciplinary action being taken. . . .
>
> If an incident of AWOL consists of more than one (1) day, your supervisor may take more severe disciplinary action up to and including dismissal.

Garbien Decl. para. 8 & Exh. K. The plaintiff testified that he was fully aware of the General Rules of Conduct and the provision set forth in the Manual entitled "Time Away From Work".

> Q: When did you become aware of those policies?
>
> A: When I was given the handbook.
>
> Q: And when was that?
>
> A: Upon employment.
>
> Q: Were you aware of the company's policies regarding absenteeism?
>
> A: Yes.

Lieber Decl. in Support of Def.Mot. for Summ.J. Exh. A. The plaintiff admits that he received four attendance-related written warnings over the course of his employment (Mot.Summ.J., at 4). The attendance related warnings were given on the following dates: June 25, 1985; February 8, 1990; October 19, 1990; and May 7, 1992. In addition, employee performance appraisals also indicate that attendance was a problem.

The plaintiff finally argues that the defendant violated its own policies by failing to notify him that he would be terminated for absenteeism. The court finds this argument to be without merit. First, the company policy that the plaintiff claims he relied upon specifically provided that: "[i]f an incident of AWOL consists of more than one (1) day, your supervisor may take more severe disciplinary action up to and including dismissal." Second, any failure to warn the plaintiff was a result of the plaintiff's own failure to report to the defendant. Any written notice given to the plaintiff had to be sent to him because he was unavailable for notification in person. Under such circumstances, the possibility of a warning was impractical. The failure of the plaintiff to either call into the company or report to work made it impossible to contact him.

## CONCLUSION

For the foregoing reasons, the court concludes that the plaintiff has failed to present a genuine issue of material fact for trial and, therefore, the defendant's motion for summary judgment should be granted. Accordingly, the defendant's motion for summary judgment (document number 15) is granted and the defendant's motion to enforce the settlement agreement is denied as moot (document number 21).