**Alfred J. YUREVICH, Plaintiff,**

v.

**SIKORSKY AIRCRAFT DIVISION, United Technologies Corporation, Defendant.**

**No. 3:97CV01831 (WWE).**

United States District Court, D. Connecticut.

May 4, 1999.

George R. Ciampa, Francis A. Miniter, Miniter & Associates, Hartford, CT, for plaintiff.

Henry A. Platt, Gary L. Lieber, Anessa Abrams, Schmeltzer, Aptaker & Shepard, Washington, DC, Edward J. Dempsey, Hartford, CT, for defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

### INTRODUCTION

Plaintiff Alfred J. Yurevich brings this five-count amended complaint against his former employer, Sikorsky Aircraft Division of United Technologies Corporation. In his complaint, plaintiff asserts that defendant has violated Sections 502 and 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1140; that defendant breached its fiduciary duty to him under ERISA; that he was the subject of a retaliatory discharge; that his supervisor made negligent misrepresentations to him; and he has suffered the negligent infliction of emotional distress. Defendant now moves for summary judgment on all counts of the amended complaint.

## STATEMENT OF FACTS

The statement of facts is taken from the parties' Local Rule 9(c) statements. Disputed facts are noted.

Plaintiff worked at defendant as Servo Mechanic B, Labor Grade 8. A Servo Mechanic overhauls and repairs used hydraulic assemblies on defendant's helicopters.

At all relevant times, plaintiff was a member of Local Union No. 1150 of the International Brotherhood of Teamsters ("Union"). The terms and conditions of plaintiff's employment with defendant were governed by various collective bargaining agreements between defendant and the Union.

In February, 1993, defendant and the Union agreed upon a new collective bargaining agreement ("CBA"), which took effect on October 1, 1993. Article XIII contained a new attendance policy. The policy provided for negotiated discipline for unsatisfactory attendance based upon objective criterion. Section 13.1(I) of Article XIII states, in pertinent part:

> An employee who is continuously absent from work for any reason for a period of time·equal to the length of his/her recall rights, up to a maximum of two (2) years, shall be terminated, irrespective of the number of points he/she may have accumulated.

On July 26, 1993, plaintiff claimed to have injured his back at work and went out of work; he never worked again.

Prior to leaving work in July of 1993, plaintiff attended department meetings where the new attendance policy was discussed. Hence, he was aware that defendant was about to implement a new attendance policy. Prior to his termination in October, 1995, plaintiff was aware that the new attendance policy was being applied to him and he knew of the two year rule. In fact, plaintiff spoke with an attorney during his absence from work because he was concerned about the defendant's attendance system.

Although Section 13.1 contains the mandatory "shall", plaintiff asserts that the two year provision may be waived.

While employed at defendant, plaintiff opted out of the Company sponsored health insurance plan and elected to be covered for health insurance purposes by Constitution Health Care, an HMO. Because plaintiff chose to be covered under an HMO, defendant was only responsible for paying the premium for plaintiff's coverage and did not underwrite any of the risk. Nevertheless, the parties are in disagreement as to whether the defendant is the HMO's sponsor and administrator, thus a fiduciary vis-a-vis the HMO.

On October 5, 1995—two years and four days after the new attendance policy went into effect—the defendant's Manager of Human Resources terminated plaintiff's employment in accordance with 13.1(I) of Article XIII of the CBA, as plaintiff had been continuously absent from work for over two years. Plaintiff was notified by certified mail of said termination, effective October 5, 1995 for excessive absenteeism.

The parties disagree on the circumstances surrounding a letter sent by plaintiff's treating physician to plaintiff's attorney, indicating that plaintiff could return to work on a restricted, "light duty" basis. It is dated September 21, 1995 but defendant's Manager of Human Resources has averred that he was unaware of this letter at the time he wrote the termination letter. The letter is not stamped as received by defendant until October 19, 1995. In any event, plaintiff's job responsibilities did not lend themselves to being restricted or light. Plaintiff testified that he was not aware of whether or when defendant received the letter, nor did he personally know about the letter at the time he was terminated.

Further, by affidavit, the Manager, the sole decision maker, asserts that he was unaware of plaintiff's medical claims under his HMO or even that plaintiff had filed a

worker's compensation claim.[1] Plaintiff admits this assertion of the manager, but adds that he informed his supervisor of his need for medical treatment and was told "not to worry" about it or his job.

Although he testified at his deposition that he believed he was terminated because of the two year provision in the CBA, plaintiff now claims that he believes management's motives for firing him were that he was making too great a use of his health benefits and that he had testified in an unrelated matter before the Office of Federal Contract Compliance.

## LEGAL ANALYSIS

### I. The Standard of Review

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.C.V.P. 56(c). See also *Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, *106 S.Ct. 2548. Accord, Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d.Cir.1995) (movant's burden satisfied by showing if he can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

### II. The Standard As Applied

#### A. Count One

In Count One of his amended complaint, plaintiff alleges that the defendant fired him with the intention of avoiding continued payment of his health care costs, in violation of Section 510 of ERISA.

Section 510 of ERISA provides, in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled to....

29 U.S.C. § 1140.

In order to prevail on such a claim, a plaintiff must establish that the defendant was motivated at least in part by the specific intent to engage in conduct prohibited by Section 510. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1111

---

1. Defendant was not liable for plaintiff's worker's compensation claim. The State of Connecticut Second Injury Fund assumed all liability for plaintiff's worker's compensation injury, as of August 11, 1993.

(2d Cir.1988). There is no cause of action under Section 510 where the loss of benefits "was a mere consequence of, but not a motivating factor behind, a termination of employment." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.1997).

■ *Dister* held that the presumptions and the burden shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) are appropriate in the context of discriminatory discharge cases brought under Section 510 of ERISA. Pursuant to this analysis, plaintiff must first establish a *prima facie* case of discrimination by demonstrating (1) that plaintiff was a member of the protected class; (2) that plaintiff was qualified for the job he was performing; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. *Dister*, 859 F.2d at 1112.

■ To dispel the inference of discrimination established by a *prima facie* case, a defendant is required to articulate—but not to prove—a legitimate, nondiscriminatory reason for the discharge. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Once a defendant articulates a legitimate reason for terminating an employee, a plaintiff's burden is then to prove that the reason advanced is a mere pretext for discrimination. *Id.* at 256, 101 S.Ct. 1089. At all times, a plaintiff bears the ultimate burden of demonstrating that the real motivation underlying the employer's actions was unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517–18, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Even though the establishment of a *prima facie* case is not onerous, plaintiff in the present case has failed to carry the burden. First, he cannot establish that he was qualified to do the job at issue. As courts have recognized in the disability discrimination context, an employee is not "otherwise qualified" for a job if he cannot attend work. *Cino v. Sikorsky Aircraft, United Technologies Corp.*, 42 F.Supp.2d 147, 1998 U.S.Dist. LEXIS 17770 at *9 (D.Conn. Sept. 29, 1998) "It is clear that an essential aspect of many jobs is the ability to appear at work regularly and on time." *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1516 (2d Cir.1995) *citing Carr v. Reno*, 23 F.3d 525, 530 (D.C.Cir.1994) (essential function of any job is an ability to appear for work).

Since plaintiff was unable to attend work for well over two years, he was not qualified to do the job. Further, when his doctor released him for work, even if he did so on a timely basis, he released him only for restricted, light duty work. Plaintiff admits that the job of Servo Mechanic B is not a restricted or light duty position.[2] For these reasons he has not made out a *prima facie* case under the second element.

■ Nor has he made out a *prima facie* case under the fourth element. He has submitted no evidence outside the realm of speculation that his discharge had anything to do "with his exercising any right to which he is entitled under the provisions of the employee benefit plan." ERISA § 510, 29 U.S.C. § 1140. Plaintiff was terminated under the mandatory terms of the CBA. It is specious to argue, as he does in his memorandum of law and in contradistinction to his responses to defendant's Local Rule 9(c) statement, that he was terminated because he over-used his health benefits, because when the sole decision maker issued the termination letter, he was unaware that plaintiff had made any medical claims. Conclusory allega-

---

**2.** Although plaintiff claims that other servo mechanics have been allowed to do perform light duty, restricted work, he has presented no admissible evidence of this. Further, he has presented no evidence that these alleged individuals were out of work for over two years.

tions, conjecture and speculation are insufficient to create a genuine issue of fact. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998).

Plaintiff further has no evidence of any kind of disparate treatment. He has acknowledged that twenty-five other employees have been terminated under the mandatory two-year rule. Accordingly, he fails under this reasoning to establish a genuine issue of material fact as to element four.

Plaintiff cannot make out a *prima facie* case under Section 510 so summary judgment will be granted on Count One.

**B. Count Two**

In Count Two of his amended complaint, plaintiff alleges that "the defendant was the fiduciary in the administrations of its health care plan" and that "defendant failed to comply with ERISA's applicable fiduciary requirements to act solely in Mr. Yurevich's interests, since he was a beneficiary, and breached its fiduciary duties by firing him to avoid having to pay his health care costs."

However, as noted earlier, and as admitted by plaintiff, when the sole decision maker, the Manager of Human Resources, terminated plaintiff under the mandatory two-year rule, the Manager was unaware that plaintiff had even been using his health care provider. Accordingly, plaintiff's admission defeats his argument that the Manager intentionally breached any duty to him.

The term "fiduciary" is defined in Section 3(21)(A) of ERISA:

[A] person is a fiduciary with respect to a plan to the extent he (i) exercises any discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or property of such plan, or has any authority

or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of the plan.

29 U.S.C. § 1002(21)(A).

According to an interpretive bulletin issued by the Department of Labor, someone who performs purely "ministerial" functions for a benefit plan is not a fiduciary. See 29 C.F.R. § 2509.75–8. Whether or not an entity or individual is a fiduciary must be determined by focusing on the function performed rather than the title held. *See Amato v. Western Union International, Inc.*, 773 F.2d 1402, 1416–17 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986).

As averred by the Manager of Employee Benefits, the functions of defendant in its relationship to plaintiff's HMO was to get him enrolled and to pay yearly premiums to plaintiff's HMO. If there is any difficulty in the administration of the HMO, she provides assistance. Finally, upon termination, it is her function to notify the HMO of the cessation of medical coverage. Defendant has no access to an employee's medical records, his use of the HMO, or his medical expenses. Defendant did not underwrite any of the risk.

The Court concludes, by reference to the definitions of the statute and the legally undisputed relationship between defendant and plaintiff's HMO, that defendant's functions were purely ministerial in nature and do not rise to the status of fiduciary. Summary judgment will be granted as to Count Two.

**C. Count Three**

In Count Three of his complaint, plaintiff alleges that "defendant retaliated against Mr. Yurevich by firing him for his having filed a claim for worker's compensation benefits." This claim is easily disposed of. First, plaintiff testified at his deposition that, given what "he now knows", he was fired under the two-year

provision of the CBA. Second, the Manager of Human Resources did not know when he terminated plaintiff that plaintiff had applied for worker's compensation, and plaintiff admits this to be true. A plaintiff cannot plead one allegation in his complaint, testify and respond to the Local Rule 9(c) statements to the contrary, and then attempt to resurrect the allegations of his complaint in a memorandum of law opposing summary judgment. As no reasonable person could find that defendant retaliated against plaintiff for his filing a claim for worker's compensation benefits, summary judgment is appropriate as to Count Three.

## D. Count Four

Plaintiff alleges in Count Four of his amended complaint that he relied upon representations of his first line foreman, Jose Melendez, "reasonably expecting that Defendant would act in accordance with them by permitting him to return to work." The sole representation attributed to Melendez is found at paragraph seventeen:

> On July 29, 1993 Mr. Yurevich telephoned Mr. Melendez and reported that he, Mr. Yurevich, had been advised by his physician that surgery on his back was necessary and that he could not return to work. Mr. Melendez responded that Defendant's management was aware of Mr. Yurevich's medical condition and that "He should not worry about it."

 Negligent misrepresentation has been defined in Connecticut and adopted by the Second Circuit as:

> One who, in the course of his business, profession, or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails·to exercise reasonable care or competence

in obtaining or communicating the information.

*Foy v. Pratt & Whitney Group*, 127 F.3d 229, 233 (2d Cir.1997), *citing Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575, 657 A.2d 212 (1995). To establish a negligent misrepresentation claim, which is held to heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure, plaintiff must (1) specify the statement he contends was fraudulent; (2) identify the speaker; (3) identify where and when the statement was made, and (4) explain why the statement was fraudulent. *Catalano v. Bedford Assoc. Inc.*, 9 F.Supp.2d 133, 136 (D.Conn. 1998). Plaintiff fails to meet this heightened requirement. He has failed to explain how Melendez's alleged response to his statement was "fraudulent" or relevant in any way to plaintiff's failure to return to work at all for over two years, or why he could not be terminated under the two-year rule.

 Further, plaintiff is unable to prove that the defendant made a misrepresentation which it knew or should have known was false. *Foy*, 127 F.3d at 233. The misrepresentation "must consist of a statement of a material past or present fact.... Statements of opinion ... are not actionable." *Omega Engineering, Inc. v. Eastman Kodak Co.*, 908 F.Supp. 1084, 1097 (D.Conn.1995). Reliance on opinions is *per se* unjustifiable because opinions, unlike facts, do not purport to be incontrovertible. *Id.* In the present case, Melendez's statement that plaintiff "shouldn't worry about it" is a pure opinion, not a statement of fact which Melendez knew to be false.

Plaintiff knew of the two-year rule before he left the company and had been informed by his Union at a later date that it was being applied.to him. Hence it was unreasonable and unjustifiable for plaintiff to. rely on· the alleged "statement" attributed to Melendez, which was contrary to the CBA.[3]

Summary judgment will be granted as to Count Four, since plaintiff cannot prove any false or fraudulent misrepresentation upon which he justifiably relied.

### E. Count Five

In Count Five of his amended complaint, plaintiff alleges that defendant negligently inflicted emotional distress upon him by firing him on the ground that he had been "excessively absent" when they knew on or about September 21, 1995, that he would be returning to work.

█ The Connecticut Supreme Court has held that in order to establish a claim for negligent infliction of emotional distress, a plaintiff must allege unreasonable conduct during the termination process, not merely wrongful termination.

> Negligent infliction of emotional distress in the employment context arises only where it is "based upon unreasonable conduct of the defendant in the termination process." *Morris v. Hartford Courant Co.*, 200 Conn. 676, 683, 513 A.2d 66 (1986). The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Madani v. Kendall Ford, Inc.*, 312 Or. 198, 204, 818 P.2d 930 (1991).

*Parsons v. United Technologies Corp.*, 243 Conn. 66, 88–9, 700 A.2d 655 (1997).

█ Several post *Parsons* cases, decided by the district courts, establish that there must be evidence that the termination was conducted in a humiliating or other unreasonable manner. *See, e.g., Sacco v. George Schmitt & Co.*, 3:97–CV–2180, 1998 WL 823039 (D.Conn. Sept. 14 1998) (dismissal of claim, holding that plaintiff had not proven that he had been terminated in an inconsiderate, humiliating or embarrassing manner); *Thomas v. Saint Francis Hospital and Medical Cen-*

*ter,* 990 F.Supp. 81 (D.Conn.1998) (claim dismissed where plaintiff produced no evidence that defendant acted unreasonably in termination).

█ Pursuant to these decisions, plaintiff must prove that the termination of his employment by defendant was done in an inconsiderate, humiliating or embarrassing manner. Even viewing the facts in the light most favorable to plaintiff, he cannot meet this test. The manner in which plaintiff was notified that he was being terminated was by a certified letter. No other action was taken by defendant in regard to this termination. Hence, his termination was handled in a professional manner.

### *CONCLUSION*

For each of the reasons set forth herein, defendants' Motion for Summary Judgment [Doc. No. 29] is GRANTED as to all counts of the amended complaint. The Clerk is directed to enter judgment for defendant and to close this case.

SO ORDERED.

---

**3.** The entire statement alleged to have been made by Melendez is also contrary to the actions taken by him. He was noting that

plaintiff was "AWOL" until, at some later date, he received a letter from plaintiff's doctor at which time he deleted the AWOL status.