127 F.3d 229
 156 L.R.R.M. (BNA) 2418
 Claudia FOY, Mary E. Nelson, Betty Bradley, Ida Haynes,
Donna Berger, Grace Ouellette, Edna Edwards,
Barbara Hatcher, Mattie Jones, And
Clayborne E. Cullen,
Plaintiffs-Appellants,
v.
PRATT & WHITNEY GROUP, An unincorporated division of United
Technologies Corporation, Gerald Mudd, Vincent
Scarpetti, And John Lawlor, Defendants-Appellees.
 No. 1250, Docket No. 96-9037.
 United States Court of Appeals,
Second Circuit.
 Argued April 21, 1997.
Decided Sept. 29, 1997.
 
 Stefan Underhill, Hartford, CT (Albert Zakarian, Day, Berry & Howard, on the brief), for Defendants-Appellees.
 Before: McLAUGHLIN, JACOBS, and PHILLIPS*, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 Plaintiffs are former employees of defendant Pratt & Whitney, a division of United Technologies Corporation ("Pratt & Whitney"), who were laid off when their work was transferred to another Pratt & Whitney plant. They allege that their manager induced them to forgo a limited transfer opportunity by falsely assuring them that another opportunity would be afforded at some later time prior to layoff. Plaintiffs brought this action in Connecticut state court, pleading state law claims for negligent misrepresentation, intentional misrepresentation, and unfair trade practices. Pratt & Whitney removed the action to the United States District Court for the District of Connecticut on the sole jurisdictional ground that the action is preempted by § 301 of the Labor Management Relations Act ("LMRA"), and the district court denied plaintiffs' motion to remand. Thereafter, Pratt & Whitney moved for summary judgment on several grounds, and the district court granted the motion on the ground of Garmon preemption under the National Labor Relations Act ("NLRA"). See San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 779-80, 3 L.Ed.2d 775 (1959).
 
 
 2
 On appeal, plaintiffs contend that the district court erred (i) in ruling that the case was removable on the basis of preemption under the LMRA, and (ii) in granting summary judgment on the basis of preemption under the NLRA. We conclude that removal was improper, and therefore vacate the judgment and remand with instruction to remand this case to state court. We do not reach the issue of Garmon preemption under the NLRA.
 
 BACKGROUND
 
 3
 Most of the facts are undisputed for present purposes. Except where otherwise indicated, we draw the facts from the complaint.
 
 
 4
 Plaintiffs were employed under a Collective Bargaining Agreement ("CBA") as "cutter/grinders" at Pratt & Whitney's manufacturing facility in North Haven, Connecticut. As cutter/grinders assigned to the "Tool Services" business unit, plaintiffs' jobs primarily involved sharpening tools to be used in the manufacturing of "rotating parts."
 
 
 5
 In 1992, Pratt & Whitney announced that it would reorganize its manufacturing operations by consolidating turbine blade production at North Haven and the production of rotating parts at Pratt & Whitney's facility in Southington, Connecticut. In the summer of 1992, defendant Vincent Scarpitti, manager of the Tool Services Unit met with plaintiffs (and others), told them about the upcoming consolidations, and notified them that there were five cutter/grinder positions open in Southington, for which applicants from North Haven were being sought. Scarpitti was aware that the CBA gave each of the North Haven cutter/grinders the right to apply for transfer to Southington.
 
 
 6
 At the same meeting, defendant John Lawlor--a Pratt & Whitney Human Resources Representative--informed plaintiffs of the procedures that would be used to implement any transfers to the Southington facility. In particular, if more than five volunteers for transfer came forward, Lawlor said that the CBA provided for transfer on the basis of seniority. Lawlor and Scarpitti also notified the employees that if any further positions became available at Southington, transfers would be made available in accordance with the CBA.
 
 
 7
 Plaintiffs allege, and defendants dispute, that the employees were also then told that they would be given an opportunity to transfer to Southington or some other Pratt & Whitney facility before being subjected to a layoff. Plaintiffs allege that, in reliance on this representation, they did not apply for the five positions open at Southington, and that between October 1992 and February 1993, they were each laid off without being afforded the promised transfer opportunity.
 
 
 8
 Plaintiffs sued in Connecticut state court in October 1994, alleging that the representations made to them constituted intentional or negligent misrepresentations, and that the misrepresentations violated the Connecticut Unfair Trade Practices Act (CUTPA). Defendants removed the action to federal court on the ground the claims were preempted by § 301 of the LMRA. Plaintiffs moved to remand the case to state court, arguing that the complaint alleged only state law claims independent of the LMRA. The district court held that plaintiffs' negligent misrepresentation claims were preempted by the LMRA, and denied the motion to remand.
 
 
 9
 Defendants then moved for summary judgment, which the district court granted on the ground that plaintiffs' claims were arguably in violation of section 8 of the NLRA, and were therefore preempted and within the jurisdiction of the NLRB pursuant to Garmon. Plaintiffs now appeal both the denial of the motion to remand, and the grant of summary judgment.
 
 
 10
 Although the issue is not free from doubt, we hold that plaintiffs' state law negligent misrepresentation claims are not preempted by the LMRA because they rest on independent state law rights that do not require interpretation of the CBA.[1] We therefore vacate the judgment and remand to the district court with instructions to remand the case to state court. We do not reach the question of Garmon preemption on which the district court granted summary judgment to Pratt & Whitney.
 
 DISCUSSION
 
 11
 The district court denied plaintiffs' motion to remand this action to state court on the basis of preemption under the LMRA. We review that decision de novo. See Shafii v. British Airways PLC, 83 F.3d 566, 570 (2d Cir.1996).
 
 
 12
 A defendant may remove an action to federal court under 28 U.S.C. § 1441(a), if the plaintiff's "well-pleaded complaint" presents a federal question, such as a federal cause of action. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429-30, 96 L.Ed.2d 318 (1987). A case may not be removed to federal court on the basis of a defense of federal preemption, even if the defense is anticipated in the complaint, and even if preemption is the only issue in the case. Id. at 393, 107 S.Ct. at 2430 (citing Franchise Tax Board of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847-48, 77 L.Ed.2d 420 (1983)).
 
 
 13
 Occasionally, however, "the pre-emptive force of a statute is so extraordinary" that any claim based on preempted state law is considered a federal claim arising under federal law. Caterpillar, Inc., 482 U.S. at 393, 107 S.Ct. at 2430. This "complete pre-emption corollary to the well-pleaded complaint rule" applies to claims under § 301 of the LMRA. Id.. Section 301 states that "[s]uits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Accordingly, if the state claims put forward by plaintiffs are preempted by § 301 of the LMRA, "the action may properly be removed to the federal courts, even when the plaintiff's complaint does not itself include a federal cause of action." Shafii, 83 F.3d at 569 (citing Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 258-64, 114 S.Ct. 2239, 2247-49, 129 L.Ed.2d 203 (1994)).
 
 
 14
 The principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied. "[W]here the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is pre-empted." Hawaiian Airlines, 512 U.S. at 260-62, 114 S.Ct. at 2248 (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988)) (emphasis added); Hernandez v. Conriv Realty Assocs., 116 F.3d 35, 38 (2d Cir.1997). However, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994) (citing Lingle, 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12.)
 
 
 15
 The Supreme Court has "underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas, 512 U.S. at 123, 114 S.Ct. at 2078. Whether a state cause of action may proceed in state court depends on "the legal character of a claim, as independent of rights under the collective bargaining agreement, (and not whether a grievance arising from precisely the same set of facts could be pursued.)." Id. (citations and internal quotations omitted). Preemption under § 301 "merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." Lingle, 486 U.S. at 409, 108 S.Ct. at 1883.
 
 
 16
 The district court concluded that plaintiffs' negligent misrepresentation claim would require interpretation of the CBA (and was therefore preempted) because this claim would require proof of the employer's negligence, which in turn would require proof that the employer breached an existing duty. The nature and scope of this duty, the court found, "arise out of and are circumscribed by the collective bargaining agreement governing the relations between the parties." We do not agree.
 
 
 17
 As the Supreme Court did in Lingle, we begin with the elements of plaintiffs' state law claim. See 486 U.S. at 407, 108 S.Ct. at 1882. The elements of a negligent misrepresentation claim under Connecticut law follow the Restatement (Second) of Torts:
 
 
 18
 One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 
 
 19
 Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 575, 657 A.2d 212 (1995) (quoting Restatement (Second) of Torts (1977)); see also D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 217-19, 520 A.2d 217 (1987). A negligent misrepresentation does not require intent: "even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." Williams Ford, Inc., 232 Conn. at 575, 657 A.2d 212 (citations omitted). To prevail on their claim, plaintiffs therefore must prove that (1) Pratt & Whitney actually made a misrepresentation; (2) Pratt & Whitney knew, should have known, or had the means of knowing that the statement was not true; and (3) plaintiffs justifiably and detrimentally relied on the misrepresentation.
 
 
 20
 Pratt & Whitney argues that two elements of the negligent misrepresentation claim--falsity and justifiable reliance--entail interpretation of the bargaining agreement. As to whether the alleged promise of a pre-layoff transfer opportunity was false, that inquiry would not be "substantially dependent upon analysis of the terms of the collective bargaining agreement," Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). The subject of the alleged false promise, a definite transfer opportunity prior to layoff, is not called for in the CBA and is outside the ambit of that agreement. The dispute as to whether this promise was false is fact-bound, and will primarily concern what was or was not stated at the summer 1992 meeting. See Wells v. General Motors Corp., 881 F.2d 166, 173 (5th Cir.1989). Indeed, Pratt & Whitney's primary defense to plaintiffs' claim is that the alleged misrepresentation was simply never made. Obviously, in reaching this conclusion, we have consulted the CBA. But the review of the CBA needed to decide preemption in this case is not in itself "interpretation" warranting preemption; if it were, the preemption doctrine under § 301 would swallow the rule that employees can assert nonnegotiable state law rights that are independent of their collective bargaining agreements. See Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401, 1409-10 (9th Cir.1991).
 
 
 21
 Pratt & Whitney also argues that proof of plaintiffs' justifiable reliance will require interpretation of the CBA. This is more compelling because the plaintiffs' limited rights under the CBA may bear upon whether plaintiffs could reasonably expect Pratt & Whitney to make the sweeping and gratuitous undertaking alleged in the complaint. We acknowledge that this is a close issue. But Pratt & Whitney's argument proves too much: a collective bargaining agreement can always be consulted to determine whether an employee is justified in relying upon an employer's promise. The argument comes down to the idea that an employee is never justified in relying upon any promise by the employer that is not enforceable under a CBA. If that were so, the existence of a CBA would require preemption in all cases involving representations made to employees. But the Supreme Court has recently clarified that § 301 preemption applies only when necessary
 
 
 22
 to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, nor by parties' efforts to renege on their arbitration promises by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.
 
 
 23
 Livadas, 512 U.S. at 122-23, 114 S.Ct. at 2078. Our examination of the provisions of the CBA cited by Pratt & Whitney assures us that the purposes behind § 301 will in no way be thwarted by allowing plaintiffs to go forward with their state law claims in state court.
 
 
 24
 First, Pratt & Whitney argues that deciding the negligent misrepresentation claims would require interpretation of Article VIII, Section 1(a) of the CBA:
 
 
 25
 In case of an indefinite layoff for lack of work, employees shall be laid off and recalled by noninterchangeable occupational groups within specified seniority areas in accordance with their seniority (length of continuous service with the company since the most recent date of hire); provided, however, the employees in job grade levels designated as "I" (interchangeable) within a job family and seniority area shall be laid off and recalled in accordance with their seniority within such job family.
 
 
 26
 In light of these mandated procedures for layoffs, according to Pratt & Whitney, plaintiffs could not have relied reasonably on a promise that they would have the option of transfer to another Pratt & Whitney facility prior to any layoff. However, the misrepresentation alleged in this case concerns plaintiffs' pre-layoff transfer options, while this provision speaks to post-layoff rehire and transfer options. A determination as to justifiable reliance here would not require interpretation of Article VIII, section 1(a).
 
 
 27
 Second, Pratt & Whitney argues that resolution of plaintiffs' negligent misrepresentation claims requires interpretation of Article VIII, section 1(b):
 
 
 28
 Nothing herein shall preclude the company from offering a transfer to an employee scheduled to be laid off from a job in one occupational group and seniority area to a job in a different occupational group or seniority area in which no laid-off employee retains seniority.... If the employee accepts such a transfer or recall, his seniority thereafter shall be in the occupational group and seniority area to which he transferred ... and he shall have no seniority in his former occupational group or seniority area.
 
 
 29
 This provision gives Pratt & Whitney a right to offer transfers to another job, prior to a layoff, provided the transfer does not impair anyone else's seniority. The provision is permissive and imposes no affirmative obligation to make such transfers. Assuming that the alleged misrepresentation was made, interpretation of this provision would not be necessary to resolve plaintiffs' state law claims. Either the alleged pre-layoff transfer offer was made pursuant to the provision or not, a question of employer intent that does not depend on an interpretation of the language in the provision. See Hawaiian Airlines, Inc., 512 U.S. at 260-62, 114 S.Ct. at 2248 (purely factual questions about an employer's conduct and motives do not require interpretation of a collective bargaining agreement). Moreover, this provision does not provide for the type of unconditional assurance of a pre-layoff transfer that plaintiffs claim they received. An employee's nonnegotiable right to sue under state law, based on promises that go beyond a CBA, is not automatically or necessarily preempted solely because the CBA provides for lesser or other rights than what the employee claims to have been promised.
 
 
 30
 Finally, Pratt & Whitney asserts that resolution of the negligent misrepresentation claims depends on an interpretation of Article VIII, Section 20, which provides:
 
 
 31
 (a) In the event the company transfers a major operation, such as the 1986 Gear Box move, or department between plants covered by this Agreement, the employees in the affected major operation or department will be given the opportunity to move with that work if other like work is not available in the affected plant.
 
 
 32
 (b) In the event that such affected employees decline to exercise an offer to move with the transferred work, any resulting imbalance in the workforce shall be adjusted as provided elsewhere in this Article.
 
 
 33
 As Pratt & Whitney argues, the triggering of this provision depends upon whether the consolidation of rotating parts production at Southington was a transfer of a "major operation." But even assuming the provision applies, plaintiffs' negligent misrepresentation claims (and, for that matter, their other state law claims) are based on a promise that went beyond the terms of the CBA--an unqualified right of transfer before layoff. Of course one might consult this provision in determining whether plaintiffs' justifiably relied on that alleged unqualified promise, but reasonable reliance is primarily a fact question as to (1) what the plaintiffs believed, and (2) the circumstances surrounding the misrepresentation made by the employer. Cf. Lingle, 486 U.S. at 407, 108 S.Ct. at 1882 (claim presented is a purely factual inquiry that does not require construing collective bargaining agreement).
 
 
 34
 In this case, what matters is not so much the accurate construing of the CBA, but plaintiffs' understanding of its provisions, and the basis of that understanding. Unlike Allis-Chalmers, this case does not involve a tort premised on the violation of duties in the CBA. 471 U.S. at 215, 105 S.Ct. at 1913. These plaintiffs' state law misrepresentation claims depend upon the employer's behavior, motivation, and statements, as well as plaintiffs' conduct, their understanding of the alleged offer made to them, and their reliance on it. See Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 231-32 (3d Cir.1995). Reference to the CBA may be needed, but state law will play no part in determining what the parties agreed to in the CBA or whether the CBA has been breached. See Livadas, 512 U.S. at 122-24, 114 S.Ct. at 2078. State law--not the CBA--is the source of the rights asserted by plaintiffs: the right to be free of economic harm caused by misrepresentation. Cf. Gay v. Carlson, 60 F.3d 83, 88 (2d Cir.1995) (state law, not collective bargaining agreement, deemed to provide the only source of employee's right to be free of defamation and right to be free of infliction of intentional harm).[2]
 
 
 35
 The foregoing preemption analysis is incomplete only insofar as it does not consider whether plaintiffs' state law claims could be recast and asserted under the CBA provisions cited by Pratt & Whitney, a parallelism between state law rights and federal law rights that might justify preemption on the basis of other federal labor law principles--such as Garmon preemption under the NLRA. Under Garmon preemption, the NLRA preempts state law "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8." Garmon, 359 U.S. at 244, 79 S.Ct. at 779. Thus, if the state law controversy is "identical to ... that which could have been, but was not, presented to the Labor Board," both state and federal courts must defer to the exclusive jurisdiction of the NLRB. Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 197, 98 S.Ct. 1745, 1757, 56 L.Ed.2d 209 (1978).
 
 
 36
 But preemption under § 301 was the only basis on which Pratt & Whitney sought to remove this case to federal court.[3] For purposes of § 301, "the existence of a potential CBA-based remedy [does] not deprive an employee of independent remedies available under state law." Hawaiian Airlines, 512 U.S. at 261, 114 S.Ct. at 2248. The Supreme Court has emphasized that
 
 
 37
 even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.
 
 
 38
 Lingle, 486 U.S. at 409-10, 108 S.Ct. at 1883. In short, the mere existence of CBA provisions relating to layoffs and transfer rights, and the possibility of federal labor law remedies for breaches of such provisions, might justify preemption under Garmon or other related doctrines. But removal to federal court in this case was based solely on § 301 preemption, and we think that removal on this ground was improper.[4]
 
 
 39
 We therefore conclude that plaintiffs' state law claims are not preempted by § 301. Accordingly, the action should be remanded to the state courts. Our decision obviates any need to review the district court's grant of summary judgment on the basis of preemption under the NLRA and Garmon.
 
 CONCLUSION
 
 40
 For the reasons set forth herein, we vacate the judgment of the district court and remand with instructions to remand the case to the state courts.
 
 
 
 *
 The Honorable J. Dickson Phillips, Jr., United States Circuit Judge for the Fourth Circuit, sitting by designation
 
 
 [1]
 The district court justified removal solely on the basis of § 301 preemption of plaintiffs' negligent misrepresentation claim and therefore did not consider whether plaintiffs' claims of intentional misrepresentation and unfair trade practices were similarly preempted. Our conclusion that the negligent misrepresentation claim is not preempted, and that removal was therefore improper, might normally lead to consideration of whether plaintiffs' other claims could justify removal. However, the claims for intentional misrepresentation and unfair trade practices are premised upon the same alleged promise of a transfer opportunity prior to any layoff, and we think the preemption analysis of those claims would therefore be no different. Thus, insofar as we conclude that the negligent misrepresentation claims are not preempted by § 301, so too are plaintiffs' additional claims
 
 
 [2]
 Pratt's citation of Dougherty v. American Telephone & Telegraph, 902 F.2d 201 (2d Cir.1990), is unpersuasive. In that case, former employees sued for fraud and negligent misrepresentations, claiming their employer had induced them to transfer to jobs from which they were subsequently laid off, by failing to advise them of post-divestiture workforce reduction and consolidation plans and projections. Unlike this case, the gravamen of the complaint in Dougherty was that the employer was obliged to provide accurate information to employees about post-divestiture plans for reductions and consolidations. Id. at 204. And those obligations were found to be inextricably intertwined with the bargaining agreement because the parties had specifically renegotiated and modified the agreement in light of the contemplated divestiture in order to set forth the job assignment, transfer procedures, and the rights of employees who would be transferred after the company reorganized, and in order to make claims involving those subjects arbitrable. So, the claim in Dougherty was properly held preempted as an effort by the plaintiffs "to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements." Livadas, 512 U.S. at 123, 114 S.Ct. at 2078 (citations omitted). In this case, the relationship between plaintiffs' claims and the collective bargaining agreement is attenuated. True, the CBA contains provisions regarding transfer and layoff procedures (as we detail in the text above), but the alleged misrepresentation was extraneous to the CBA. Plaintiffs cannot be seen as reneging on their arbitration promises. As we note above, allowing preemption in this more generalized case would extinguish the state law rights of employees on any claims arising from promises made by employers that exceed the guarantees of bargaining agreements simply because the bargaining agreements contain lesser rights. We think that rule would be inconsistent with the Supreme Court's more recent focus on the fact that employees do not give up their state law rights by entering into collective bargaining agreements. See id. at 124-26, 114 S.Ct. at 2079. We recognize that a broad reading of Dougherty might tend to support Pratt's position, but we think that the emphasis on the viability of claims concerning nonnegotiable state law rights in cases like Livadas and Norris--which post-date Dougherty--discourage that broader interpretation
 
 
 [3]
 Notably, once Pratt & Whitney had removed this case to federal court, they succeeded in having the case dismissed on summary judgment on the basis of Garmon preemption. We do not reach the difficult Garmon issues in this case because we find that removal in the first instance on the basis of § 301 was improper
 
 
 [4]
 We express no view as to whether Garmon preemption is ever a proper basis for removal. See Hayden v. Reickerd, 957 F.2d 1506, 1512 (9th Cir.1992) (Garmon preemption not a valid basis for removal; state court may consider the issue). Defendants removed this action to district court solely on the basis of LMRA preemption. Of course, upon remand the state court may yet consider the Garmon preemption issue