Kevin **BUOTE** and Kimberly Buote Plaintiffs,

v.

**VERIZON NEW ENGLAND and Bell Atlantic Communications, Inc. Defendants.**

No. 2:00–CV–475.

United States District Court, D. Vermont.

March 12, 2002.

Thomas C. Bixby, Esq., McCarty Law Offices, Brattleboro, VT, for Kevin Buote, Kimberly Buote, plaintiffs.

Potter Stewart, Jr., Esq., Kirsten A. Beske, Esq., Potter Stewart Law Offices, P.C., Brattleboro, VT, for Verizon New England, Bell Atlantic Communications Inc., defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiffs Kevin and Kimberly Buote brought suit against defendants Verizon New England ("Verizon") and Bell Atlantic Communications (collectively, "Bell Atlantic") on November 2, 2000 in Vermont State Court. Bell Atlantic subsequently removed the case to this court. Kevin Buote ("Buote") claims breach of contract (counts I and VII), insurance bad faith (counts II and VIII), and breach of fiduciary duties (counts III and IX) by Bell Atlantic during its handling of his workers' compensation claim.[1] Kim Buote brings a claim of loss of consortium (count X) stemming from the alleged damages caused to Buote. On July 30, 2001 Bell Atlantic moved for summary judgment on all of the Buotes' claims based on preemption by section 301(a) of the Labor Management and Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185(a), and section 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a), and exclusion by section 622 of the Vermont Workers' Compensation Act ("VWCA"), Vt. Stat. Ann. tit. 21, § 622. (Paper 30). For the reasons described below, the Court GRANTS in part and DENIES in part Bell Atlantic's' motion for summary judgment.

## I. BACKGROUND

### A. Facts

The following facts are viewed, as they must be when considering a motion for

---

1. Plaintiffs also initially brought the same claims against Aetna Life Insurance Company. However, these claims were dismissed with prejudice through a stipulation on May 12, 2001. Stipulation for Dismissal (Paper 23).

summary judgment, in the light most favorable to the non-moving parties, the Buotes. In 1997 Buote was employed as a splice technician for Bell Atlantic. On October 27, 1997 he was injured in the course of his employment when he fell from a ladder while servicing a telephone cable. As a result of this fall Buote suffered injuries including a broken wrist and finger, fractures of the orbit and sinus, and facial lacerations. He returned to work as a splice technician for Bell Atlantic in January 1998.

On or about January 1, 2000 Buote began to suffer dizziness, headaches, and blurred vision. A few weeks later he reported his condition to his immediate supervisor. On January 27, 2000 Buote met with a Dr. Leppman who diagnosed his condition as related to the October 1997 injury. Dr. Leppman also determined that Buote's condition made him unable to perform his work as a splice technician.

Buote informed Bell Atlantic's compensation adjuster, Steve Gottsche ("Gottsche"), of his condition. Despite being informed of Buote's previous fall and Dr. Leppman's diagnosis linking Buote's condition to that fall, Gottsche denied Buote's workers' compensation claim because he found that Buote's condition was not work-related. Instead he placed Buote on non-occupational disability pursuant to Bell Atlantic's Disability and Sickness Plan. During the winter and spring of 2000, Buote's doctors maintained that Buote's condition was related to the October 1997 fall and that it prevented him from working as a splice technician.

Despite these consistent medical determinations, on May 21, 2000 Buote was terminated from non-occupational disability by Bell Atlantic and was requested to return to work. The notice provided to Buote stated that his non-occupational disability benefits were terminated because he had not provided Bell Atlantic "with

sufficient clinical information to indicate [he was], or continue[d] to be, disabled from working." Bell Atlantic Letter, 5/24/000 at 1 (Paper 37, Ex. 13). At this time Buote sought and obtained legal representation. During an informal conference with the Vermont Workers' Compensation Board in July 2000, the Workers' Compensation Specialist, Janet LaPerle ("LaPerle"), determined that Buote's current medical condition was a result of the October 1997 work injury. LaPerle requested that Bell Atlantic "reinstate temporary total disability benefits effective January 20, 2000" and that these benefits be paid "under the workers' compensation policy for Bell Atlantic." LaPerle Letter, 7/18/2000 (Paper 37 Ex. 14). She further required that these benefits be paid to Buote immediately, within ten days after the conference.

Between July of 2000 and February of 2001, Bell Atlantic repeatedly failed to provide Buote with the appropriate workers' compensation benefits in a timely manner. In particular, despite LaPerle's clear request that Bell Atlantic provide Buote with the workers' compensation benefits within ten days of their conference, on August 4, 2000 Buote's attorney wrote to Gottsche that Buote had not yet received a check. Buote's attorney sent another letter on August 21, 2000 stating that Buote had still not received a check. Even after a check was received on August 28, 2001 similar delays in Buote's receipt of subsequent checks continued until early February 2001. During this time Bell Atlantic also failed to provide Buote with checks for the correct amount or with information on reassignment within Bell Atlantic to positions appropriate for his condition. These failures continued despite persistent letters and phone calls from Buote's attorney requesting that the payments be sent and explaining the economic hardship the delays and incorrect benefit amounts were

causing Buote's family. In these letters, Buote's attorney also repeatedly informed Bell Atlantic of various job-openings within the company that Buote felt he would be able to undertake despite his condition. Buote has identified numerous other Bell Atlantic positions open during this time period that he would have been qualified for and able to undertake despite his disability.

Based on the delays and inaccuracies in the benefit payments, on April 19, 2001 Laura K. Collins, Director of Workers' Compensation in Vermont, recommended that Bell Atlantic pay Buote's attorney's fees for 22 hours of work. At present Verizon has paid Buote all past due wages due under the VWCA and these attorney's fees, as well as a lump sum for permanent partial disability resulting from the 1997 fall.[2]

During these events Buote was a member of the International Brotherhood of Electrical Workers, AFL–CIO Local 2326 (the "Union"). On or about January 27, 2000 Buote contacted his Union representative and informed the representative of his "situation."[3] He continued to contact his Union representative every other weekday, however, the Union did not conduct an investigation into his placement on non-occupational disability instead of workers' compensation. Neither Buote nor the Union filed a formal grievance regarding Buote's workers' compensation claim using the procedures set out in the agreement between the Union and Verizon ("Labor Contract"). *See* Union Agreements, Effective Aug. 6, 2000 and Aug. 9, 1998, Art. G8 (Paper 32, Ex. B).

During the period in which Bell Atlantic's payments to Buote were denied, delayed, and/or incorrect, Buote and his family faced resulting economic hardship, including eviction from their home and reliance on public assistance. In addition, Buote received benefit checks that did not include the same pay differential that he received while on workers' compensation in 1997 after his fall.[4] Finally, despite Buote's suggestions of open positions that he would be willing and able to fill and the availability of various other job openings during that time, Bell Atlantic did not offer Buote re-employment. Presently Buote has obtained a lower paying job[5] and has been forced to relocate.

### B. Relevant Provisions of the VWCA

The VWCA regulates compensation of workers for "personal injury by accident arising out of and in the course of employment." Vt. Stat. Ann. tit. 21, § 618 (Lexis Supp.2001). Personal injury is defined to include "occupational diseases, death resulting from injury within two years." *Id.* § 601(7). Among other benefits, the VWCA guarantees employees certain medical benefits, *id.* § 640, as well as wage

---

2. Thus, Buote is not seeking payment or provision of any benefits due under the VWCA. He seeks consequential damages stemming from Bell Atlantic's alleged breach of contract and fiduciary duties, and bad faith, in handling his workers' compensation claim.

3. It is not clear from the record what is meant by "situation." It may indicate that Buote informed his representative that he was having trouble obtaining workers' compensation, or simply that he had had a reoccurrence of the 1997 injury and was being placed on non-occupational disability.

4. Buote alleges that when he was on workers' compensation prior to the year 2000, he received the difference between his regular pay with Bell Atlantic and his workers' compensation benefits minus thirty dollars, in addition to state-mandated workers' compensation benefits.

5. The Court presumes that this new position is not with Bell Atlantic; however, the record is unclear on this point.

compensation when the employee is unable to work as a result of disability caused by the injury, *id.* §§ 642, 643, 646. When disability is permanent, either total or partial, the employer has additional monetary support obligations. *Id.* § 644, 648. The VWCA also provides benefits involving vocational rehabilitation. Under section 641, "[w]hen as a result of an injury covered by this chapter, an employee is unable to perform work for which the employee has previous training or experience, the employee shall be entitled to vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore the employee to suitable employment." *Id.* § 641.

The VWCA requires employers to secure payment of compensation for their employees in one of four ways, including through self-insurance. *Id.* § 687. In this case Bell Atlantic is self-insured.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of coming forward with those parts of the record it feels demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

When evaluating a motion for summary judgment, the court is required to view the evidence in the light most favorable to the nonmoving party. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party on a material issue of fact, summary judgment is improper. *See, e.g., Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

## III. DISCUSSION

Buote claims that Bell Atlantic has violated its contractual and fiduciary obligations to him under the Labor Contract and has acted in bad faith in its administration of his workers' compensation claim. Specifically, he contends that the Bell Atlantic breached these duties when Bell Atlantic: (1) initially denied him workers' compensation benefits in January 2000; (2) cancelled his non-occupational disability benefits in May 2000; (3) failed to provide him with timely workers' compensation benefits in the correct amounts from July 2000 to February 2001; (4) failed to offer him vocational rehabilitation despite his requests during the same time period; and (5) failed to provide him the appropriate pay differential, apparently at all times that such benefits have been provided post-January 2000. Bell Atlantic argues that Buote's claims are precluded by the preemption provisions of the LMRA and ERISA, and the exclusivity provision of the VWCA.

### A. Preemption by the LMRA

■ Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or

without regard to the citizenship of the parties.

29 U.S.C.A. § 185(a) (West 1998). This provision completely preempts state-law-based claims for "[s]uits for violation of contracts between an employer and a labor organization." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393–94, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *accord Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

Preemption under section 301 of the LMRA has broad scope and extends beyond suits involving state law contract claims. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In *Lueck* the Supreme Court extended federal preemption to a state law tort remedy for bad faith in the handling of an insurance claim by the insurer who administered a non-occupational disability insurance plan included in a collective bargaining agreement. Preemption was required because the "parties' agreement as to the manner in which a benefit claim would be handled [would] necessarily [have been] relevant to any allegation that the claim was handled in a dilatory manner." *Id.* at 218, 105 S.Ct. 1904.

■ However, the Court also cautioned in *Lueck* that "it would be inconsistent with congressional intent under [section 301] to preempt state rules that . . . establish rights and obligations, independent of a labor contract." *Id.* at 212, 105 S.Ct. 1904; *accord Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260–61, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (quoting the same *Lueck* passage in case involving the Railway Labor Act, which is "virtually identical to the pre-emption standard the Court employs in cases involving § 301"); *Livadas v. Bradshaw*, 512 U.S. 107, 123–124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). Thus, if the "state-law claim can be re-

solved without interpreting the [collective bargaining] agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *accord Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38–39 (2d Cir.1997).

■ Moreover, courts should proceed cautiously when preemption involves " 'nonnegotiable rights conferred on individual employees as a matter of state law.' " *Hawaiian Airlines*, 512 U.S. at 261, n. 8, 114 S.Ct. 2239 (quoting *Livadas*, 512 U.S. at 123, 114 S.Ct. 2068); *Foy v. Pratt & Whitney Group*, 127 F.3d 229, 233 (2d Cir.1997); *Hernandez*, 116 F.3d at 38. For example, in *Lingle*, which involved a state law retaliatory discharge claim based upon the employee's invocation of workers' compensation rights, the Court found no preemption. In doing so it noted that in cases involving state laws creating minimum labor standards " 'pre-emption should not be lightly inferred . . . , since the establishment of labor standards falls within the traditional police power of the State.' " *Id.* at 412, 108 S.Ct. 1877 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)).

■ To evaluate whether a state law claim is preempted by the LMRA, the Court must consider the elements of the cause of action and whether proof of these elements would require interpretation of the Labor Contract. *See Lingle*, 486 U.S. at 407, 108 S.Ct. 1877 (following the *Lueck* Court's analysis by evaluating the required elements of the state law claim); *accord Foy*, 127 F.3d at 233. To prevail on his claim of insurance bad faith, Buote must demonstrate that Bell Atlantic (1) had no reasonable basis to deny benefits of the policy, and (2) knowingly or recklessly disregarded the fact that it had no reasonable

basis to deny benefits.[6] *Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 403, 670 A.2d 807, 809 (1995); *see also Lauzon v. State Farm Mut. Automobile Ins. Co.*, 164 Vt. 620, 621, 674 A.2d 1246, 1247 (1995).

■ There is no disagreement that the Labor Contract does not address eligibility for workers' compensation.[7] Thus, the first element is demonstrated solely by reference to the eligibility requirements of the VWCA and the medical records and other information supplied to Bell Atlantic by Buote. The second element involves consideration of the factual circumstances surrounding the denial and delay. To defend against an insurance bad faith claim, the Bell Atlantic must show that the claim was "fairly debatable," *Bushey*, 164 Vt. at 403, 670 A.2d at 809, which would depend upon similar factual evidence. None of these elements requires the Court to interpret any term of the Labor Contract. Accordingly, the Court cannot find that Buote's claims of bad faith in the initial workers' compensation eligibility determination and the delays in providing the benefits during the summer-winter of 2000–2001 are preempted by the LMRA as a matter of law.

■ The vocational rehabilitation claim is more complicated because it is addressed in both the VWCA and a Memorandum of Commitment entitled "Disability Pay and Arbitration of Medical Determinations," which addresses, among other things, reassignment of disabled employees. *See* n. 4 *supra.* In his memorandum

opposing summary judgment, Buote states that Bell Atlantic has failed to fulfill its statutory duty under the VWCA to provide vocational rehabilitation. Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 4 (Paper 37). Buote does not assert bad faith in administering the vocational rehabilitation benefits provided for by the Labor Contract. That Buote may have "parallel" claims under state law and the Labor Contract that require addressing the same factual issues does not make the state law claim dependent on the Labor Contract. *See Lingle*, 486 U.S. at 409–410 & n. 10, 108 S.Ct. 1877; *Foy*, 127 F.3d at 236. Thus, Buote's bad faith claim based on vocational rehabilitation is not preempted by the LMRA.

■ The same cannot be said for Buote's claim of bad faith in the termination of non-occupational disability benefits. Eligibility for non-occupational disability benefits is not covered, by definition, by the VWCA. Bell Atlantic alleges that these benefits are provided pursuant to Bell Atlantic's Disability and Sickness Plan and that consideration of the claims would require interpretation of the Labor Contract. Buote does not dispute these allegations. Accordingly, any claim based on termination of these benefits is preempted by the LMRA.[8]

■ With regard to the pay differentials not included in Buote's workers' compensation benefits, Bell Atlantic has provided no explanation of the source of the pay differentials. Because there is no evi-

---

6. In this case, Bell Atlantic is both an employer and an insurer, as there is no dispute that it chose to self-insure under the VWCA.

7. The parties have provided the Court with limited portions of the Labor Contract. One of these sections, a Memorandum of Commitment entitled "Disability Pay and Arbitration of Medical Determinations" addresses reasonable accommodation and job reassignment, as well as pay rates, for workers with disabilities

(including workplace disabilities eligible for workers' compensation benefits). It does not address determinations of workers' compensation eligibility or administration of workers' compensation payments.

8. Even if the bad faith claim based on provision of the non-occupational disability benefits were not based on the Labor Contract, as discussed below, it is also preempted by ERISA.

dence that these differentials derive from the Labor Contract or that resolving this claim requires interpretation of the Labor Contract, Bell Atlantic is not entitled to summary judgment on this issue based on preemption under the LMRA.

In his complaint under breach of contract Buote states that Bell Atlantic "owed a contractual, fiduciary, and legal duty based on the Union Labor Agreement and statutory duty to Plaintiff, Kevin Buote, to compensate him for the injuries sustained as a result of the accident." Complaint ¶ 37 (Paper 4).[9] Similarly, he invokes the Labor Contract in his breach of fiduciary duty claims. Complaint ¶¶ 20, 46 ("Pursuant to the terms and conditions set forth in the [Labor Contract], [Buote] expected [Bell Atlantic] to honor their fiduciary duties and the requirements set forth in [the Labor Contract]"). To the extent that Buote claims breach of provisions of the Labor Contract, his breach of contract and fiduciary duty[10] claims are necessarily preempted by the LMRA.[11]

## B. Preemption by ERISA

ERISA governs "employee benefit plan[s] ... established or maintained ... by any employer engaged in commerce or in any industry or activity affecting com-

merce." 29 U.S.C.A. § 1003(a)(1) (West 1999). "Employee benefit plans" include plans, funds, or programs established or maintained by the employer "for the purpose of providing for its participants ..., through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, ...." Id. § 1002. A plan or fund established or maintained to provide benefits in the event of work-related injury would fit within this definition.

Section 514(a) of ERISA contains a specific preemption provision:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ... not exempt under section 1003(b) of this title.

29 U.S.C.A. § 1144(a) (West 1999). Section 1003(b), which outlines ERISA's coverage, expressly excludes employee benefit plans "maintained solely for the purpose of complying with applicable workmen's compensation laws." Id. § 1003(b)

Recently the Supreme Court has placed limits on the traditionally broad scope of

---

**9.** Buote brings a similar count of breach of contract against Verizon in Count 1, although this count does not explicitly mention the Labor Contract. Complaint ¶ 12 (Paper 4). As no other contract has been alleged by Buote, the Court presumes that this count also involves the Labor Contract.

**10.** Federal courts have limited jurisdiction, thus the Court was required to address the preemption of Buote's breach of fiduciary duty claims prior to considering the merits of these claims. See, e.g., Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir.2001). However, the Court notes that Buote could not have proceeded on these claims even if they were not preempted. An insurer does not owe a fiduciary duty to its insured with regard to a

first-party insurance agreement, thus there was no breach of any fiduciary duty by Bell Atlantic in this case. Lauzon, 164 Vt. at 622, 674 A.2d at 1248.

**11.** To the extent that Buote also alleges breach of the implied covenant of good faith and fair dealing with regard to the improper handling of his workers' compensation claim, it too is preempted by LMRA. See Lueck, 471 U.S. at 216, 105 S.Ct. 1904 (stating that the duty to act in good faith when performing under a contract "ultimately depends upon the terms of the agreement between the parties, [it is] tightly bound with questions of contract interpretation that must be left to federal law").

ERISA preemption. *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (admitting that the "relate to" text of § 514(a) is potentially limitless and "look[ing] instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive"). *Cf. District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 129, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). However, as discussed below, detailed consideration of whether the claims involved in this case impermissibly "relate to" an ERISA-covered benefit plan is not necessary at this stage.

■ "State laws" under section 514(a) include state statutes as well as state common law causes of action, such as torts for improper handling of benefits. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The VWCA itself is not preempted as it focuses solely on workers' compensation benefits and does not attempt to regulate ERISA-covered benefit plans. *See, e.g., Combined Mgmt., Inc. v. Superintendent of the Bureau of Ins.,* 22 F.3d 1, 5 (1st Cir.1994) (similar workers' compensation law not preempted by ERISA); *Employee Staffing Servs. v. Aubry,* 20 F.3d 1038, 1041 (9th Cir.1994) (same). Bell Atlantic argues, however, that Buote's state common law causes of action, although involving state-mandated workers' compensation benefits under the VWCA, impermissibly relate to an ERISA-covered employee benefit plan.

■ To evaluate whether Buote's claims involve an ERISA-covered benefit plan, the Court looks to the Supreme Court's decision in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), which involved a simi-lar claim of improper handling of state-mandated disability benefits also exempted by section 1003(b) (West 1999). At issue is whether Buote's claims involve a benefit plan that is "separately administered," *Shaw,* 463 U.S. at 107–08, 103 S.Ct. 2890, and "maintained solely for the purpose of complying with applicable ... workers' compensation law." 29 U.S.C.A. § 1003(b). *See also Walker v. Health Benefit Mgmt. Cost Containment, Inc.,* 860 F.Supp. 1163, 1166 (N.D.Tex.1994); *du Mortier v. Massachusetts Gen. Life Ins. Co.,* 805 F.Supp. 816, 819 (C.D.Cal.1992). The test is "whether the plan, as an administrative unit, provides only those benefits required by the applicable state law." *Shaw,* 463 U.S. at 107, 103 S.Ct. 2890; *accord Greater Washington Board of Trade,* 506 U.S. at 131–32, 113 S.Ct. 580.

■ At this stage the Court cannot find that Bell Atlantic provided its employees workers' compensation benefits as part of a multi-benefit ERISA-covered plan administered as a single unit. The Court has not been provided with a copy of Bell Atlantic's disabilities plan(s) or policy(ies). The record yields only limited evidence addressing this issue. The affidavit of the Health Care Manager for Aetna "familiar with [Aetna's] duties under its agreement with Verizon to administer some of Verizon's disability benefits plans," states that eligibility determinations under these plans "are made by Verizon (and/or the appropriate government agency with respect to the Workers' Compensation plan)." Aff. of Tammy R. Niedzwecki (Paper 37, Ex. 28). The letter from Vermont Workers' Compensation Specialist LaPerle states that Bell Atlantic "should pay [Buote's claim] under the workers' compensation policy for Bell Atlantic." (Paper 37, Ex. 14). If anything these statements suggest that Bell Atlantic had separate plans for workers' compensation and non-

occupational disability benefits and that these plans were administered by a number of different parties, including Verizon, Aetna, and the state of Vermont. Accordingly, Bell Atlantic has not shown that it is entitled to summary judgment on the issue of ERISA preemption as a matter of law with regard to the provision of workers' compensation benefits, including VWCA vocational rehabilitation. *See du Mortier,* 805 F.Supp. at 819 (refusing to grant summary judgment where there was no evidence that the benefit plan at issue was administered as a unit with the general ERISA-covered benefit plan). The same conclusion applies to Buote's claims regarding the pay differential, as Bell Atlantic has not demonstrated that this benefit derives from an ERISA-covered plan.

The same cannot be said for Buote's claims based on termination of non-occupational disability benefits. These benefits are not covered by the VWCA or required by other state law exempt under section 1003(b). It is undisputed that the non-occupational disability benefits stem from Bell Atlantic's Disability and Sickness Plan and Buote does not dispute Bell Atlantic's assertion that this is an ERISA-covered employee benefit plan. Bell Atlantic has met its burden of showing that the claim for non-occupational disability benefits is preempted under ERISA as a matter of law.

## C. Exclusion Under the VWCA

Finally, the Court turns to Bell Atlantic's defense based on the exclusivity provision of the VWCA. At this point the following claims remain: insurance bad faith based on Bell Atlantic's (1) initial determination of ineligibility in January 2000, (2) delay in providing these workers' compensation benefits during the summer-winter of 2000–2001, (3) failure to provide Buote vocational rehabilitation benefits pursuant to the VWCA, and (4) failure to provide pay differentials.

Section 622 of the VWCA provides that:

[T]he rights and remedies granted by the provisions of this chapter to an employee on account of a personal injury for which he is entitled to compensation under the provisions of this chapter shall exclude all other rights and remedies of the employee, the employee's personal representatives, dependents or next of kin, at common law or otherwise on account of such injury.

Vt. Stat. Ann. tit. 21, § 622 (Lexis Supp. 2001). "The purpose of the workmen's compensation law is to provide, not only for employees a remedy which is both expeditious and independent of proof of fault, but also for employers, a liability which is limited and determinate." *Morrisseau v. Legac,* 123 Vt. 70, 76, 181 A.2d 53, 57 (1962); *accord Gerrish v. Savard,* 169 Vt. 468, 471, 739 A.2d 1195, 1197–98 (1999). In order to effectuate this purpose, the section 622 exclusivity provision has been given broad effect. *See* Vt. Stat. Ann. tit. 21, § 709 (1987) (setting aside the rule of strict construction for statutes in derogation of the common law in the case of the VWCA); *Kittell v. Vermont Weatherboard, Inc.,* 138 Vt. 439, 441, 417 A.2d 926, 927 (1980) (scope of section 622 broad even where this may work hardship in individual cases).

However, the exclusivity provision is not unlimited in its scope. In particular, to be excluded a suit must involve an accidental personal injury which is compensable under the VWCA. Consideration of these limitations indicates that Buote's insurance bad faith claim is not preempted by section 622.

The VWCA provides compensation to workers for accidental personal injuries "arising out of and in the course of employment by an employer subject to this

chapter." Vt. Stat. Ann. tit. 21, § 618(a) (Lexis Supp.2001). "An injury arises out of employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he or she was injured." *Clodgo v. Rentavision, Inc.,* 166 Vt. 548 at 551, 701 A.2d 1044, 1046 (1997). This requires the claimant to demonstrate that the injury would not have occurred " 'but for' the employment and his position at work." *Id.* "An accident occurs in the course of employment when it was within the period of time the employee was on duty at a place where the employee was reasonably expected to be while fulfilling the duties of the employment contract." *Id.,* 166 Vt. at 552, 701 A.2d at 1046 (emphasis omitted).

■ In light of these definitions, Buote's claim of bad faith in the handling of his workers' compensation claim is outside the scope of the exclusivity provision. This injury occurred subsequent to and independent of his 1997 fall and the January 2000 reoccurrence at a time when Buote was disabled from working for Bell Atlantic as a splice technician. Buote is not seeking the kind of damages that would flow from a claim for workers' compensation benefits, such as past due benefits, interest, or fees. Instead he seeks compensation for consequential economic damages resulting from bad faith conduct by Bell Atlantic separate and apart from the original work-related personal injury.

While it can be said that the mishandling would not have occurred "but for" this original injury, the injury complained of by Buote is only very tenuously related to the original injury. *See Lowman v. Piedmont Executive Shirt Mfg. Co.,* 547 So.2d 90, 93–94 (Ala.1989) (in the workers' compensation context, "but-for" bootstrapping of the insurer's subsequent bad faith actions to the original incident is untenable). Moreover, the mishandling

cannot be said to have occurred "in the course of employment" as this requirement has been interpreted by the Vermont courts. The mishandling did not occur while Buote was "on duty." To the contrary, the mishandling occurred in late January 2000 and during the summer through winter of 2000–2001, during which time Buote was not "fulfilling the duties of [his] employment contract." *Clodgo,* 166 Vt. at 552, 701 A.2d at 1046. At these times Buote was unable to work as a splice technician and was dependent upon the workers' compensation checks for income.

■ In addition, in this case Buote alleges that Bell Atlantic's bad faith is more than accidental or negligent. While the tort of insurance bad faith requires only knowing or reckless disregard for the fact that an injury is reasonably compensable, Buote alleges that Bell Atlantic acted intentionally, as well as knowingly and recklessly. Complaint ¶¶ 16, 42 (Paper 4). Intentional actions aimed specifically at an employee with the intent to cause harm do not fall within the "accidental" personal injuries compensable under section 618(a) of the VWCA. *See Goodstein v. Bombardier Capital, Inc.,* 889 F.Supp. 760, 766–767 (D.Vt.1995) (finding claim of intentional infliction of emotional distress by sexual harassment and discrimination in the workplace not excluded by section 622), reconsidered on other grounds, 167 F.R.D. 662 (D.Vt.1996); *Kittell,* 138 Vt. at 441, 417 A.2d at 927 (actions taken with genuine intent to injure not excluded by the VWCA). Because the intentionally-caused harm of delay and refusal to provide workers' compensation benefits would not be compensable under the VWCA, an insurance bad faith action based on this intentional harm would not be excluded by the VWCA.

■ Bell Atlantic argues that the VWCA provides remedies, outside of actual workers' compensation benefits, to

employees such as Buote who experience dilatory processing of their workers' compensation claims. In particular, under section 678(a) the commissioner of the Department of Labor and Industry may "allow the claimant to recover reasonable attorney fees when the claimant prevails." Vt. Stat. Ann. tit. 21, § 678(a) (Lexis Supp.2001). This award is not constrained by a requirement that the claimant demonstrate unreasonable delay or unnecessary expense, but it "is consistent with the [VWCA's] underlying purpose to make claimants whole." *Hodgeman v. Jard Co.*, 157 Vt. 461, 465, 599 A.2d 1371, 1373 (1991). In this case there is no dispute that the Department of Labor and Industry required Bell Atlantic to pay these fees.

The award of attorney's fees can hardly be said to make Buote whole in light of the consequential economic damages he alleges. Buote's suit was not prompted by a desire for reimbursement of out-of-pocket expenses incurred as a result of his work-related injury and his suit to obtain workers' compensation benefits. It was brought to provide compensation for consequential damages produced by alleged bad faith in handling his claim.

Nor can the other remedies under the VWCA be said to compensate Buote. The VWCA imposes administrative penalties on the employer or insurance company for certain violations of the VWCA and rules and regulations promulgated pursuant to it. *See* Vt. Stat. Ann. tit. 21, § 688(a) (Lexis Supp.2001) (fine of not more than $5,000 for such violations); *id.* § 692(a) (same, if after a hearing the employer fails to comply). *See also id.* § 689 (self-insuring employer may be required to purchase insurance for violations based on refusal or wilful neglect); *id.* § 692(c) (employer's premises may be closed if it fails to provide workers' compensation within two years after receiving an order to do so). These administrative penalties do not compensate an employee for economic damages resulting from bad faith handling of a workers' compensation claim.

In sum, the Court cannot presume that these limited provisions were intended to exclusively compensate employees for consequential damages resulting from intentional, reckless, and/or knowing bad faith in the rejection of and delay in providing workers' compensation benefits.[12] *Cf. Murray v. St. Michael's College*, 164 Vt.

---

**12.** Using similar reasoning, a substantial number of states have also permitted employees to pursue intentional or bad faith tort claims against workers' compensation insurers who have mishandled their claims. *See Martin v. Reliance Ins. Co.*, 954 F.Supp. 476, 478–79 (D.Conn.1997); *Stump v. Crawford & Co.*, 726 F.Supp. 228, 233–34 (N.D.Ind.1989); *Lowman v. Piedmont Executive Shirt Mfg. Co.*, 547 So.2d 90, 94 (Ala.1989); *Stafford v. Westchester Fire Ins. Co.*, 526 P.2d 37, 42–44 (Alaska 1974), overruled on other grounds, 556 P.2d 525 (1976); *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 872 P.2d 668 (1994); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1271 (Colo.1985); *Boylan v. Am. Motorists Ins. Co.*, 489 N.W.2d 742, 743 (Iowa 1992); *Gibson v. Nat'l Ben Franklin Ins. Co.*, 387 A.2d 220, 222 (Me.1978); *Gallagher v. Bituminous Fire & Marine Ins. Co.*, 303 Md. 201, 492 A.2d 1280,

1283–84 (1985); *Kaluza v. Home Ins. Co.*, 403 N.W.2d 230, 236 (Minn.1987); *S. Farm Bureau Cas. Ins. Co. v. Holland*, 469 So.2d 55, 58 (Miss.1984); *Hayes v. Aetna Fire Underwriters*, 187 Mont. 148, 609 P.2d 257, 262 (1980); *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 215 (Tex.1988). *But see Connolly v. Maryland Cas. Co.*, 849 F.2d 525, 528 (11th Cir.1988) (applying Florida law); *Whitten v. Am. Mut. Liab. Ins. Co.*, 468 F.Supp. 470, 474–75 (D.S.C.1977), aff'd, 594 F.2d 860 (4th Cir. 1979) (applying South Carolina law); *Soto v. Royal Globe Ins. Co.*, 184 Cal.App.3d 420, 229 Cal.Rptr. 192, 197 (1986); *Bright v. Nimmo*, 253 Ga. 378, 320 S.E.2d 365, 368 (1984); *Robertson v. Travelers Ins. Co.*, 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866, 871 (1983); *Bergeron v. N. Am. Underwriters, Inc.*, 549 So.2d 315, 315 (La.1989); *State ex rel. Am. Motorists Ins. Co. v. Ryan*, 755 S.W.2d 399,

205, 210, 667 A.2d 294, 298–99 (1995) (in case involving retaliatory discharge for filing workers' compensation claim finding that similar limited and discretionary civil penalties available to commissioner should be augmented by employee's right to civil redress since retaliatory discrimination by employer constitutes both a public and a private wrong). Thus, Buote's remaining bad faith claims are not, as a matter of law, preempted by the VWCA.

### D. Kim Buote's Loss of Consortium Claim

Because four of Buote's insurance bad faith claims remain alive, Kim Buote's loss of consortium claim also remains viable on the basis of these claims. *See Murray*, 164 Vt. at 213–14, 667 A.2d at 301. Accordingly, Bell Atlantic's are not entitled to summary judgment on this claim.

### IV. CONCLUSION

WHEREFORE, the Court GRANTS in part and DENIES in part Bell Atlantic's motion for summary judgment (Paper 30); Counts I, III, VII, and IX are dismissed.

400 (Mo.App.1988); *Cruz v. Liberty Mut. Ins. Co.*, 119 N.M. 301, 889 P.2d 1223, 1226 (1995); *Cianci v. Nationwide Ins. Co.*, 659 A.2d 662, 670 (R.I.1995).